[Civ. No. 5827.   Third Appellate District.—April 1, 1937.]

M. G. WEST COMPANY (a Corporation), Respondent, v. CHARLES G. JOHNSON, as State Treasurer, etc., et al., Appellants.

U. S. Webb, Attorney-General, and H. H. Linney and James J. Arditto, Deputies Attorney-General for Appellants.

Douglas A. Nye for Respondent.

PLUMMER, J.—The plaintiff had judgment in an action to recover the amount of sales tax paid under protest. From this judgment the defendants appeal.

Involved in this action is the question of whether the gross receipts of sales made by a retailer of tangible personal property to the Federal Land Bank of Berkeley, to the Federal Intermediate Credit Bank of Berkeley, to the Berkeley Bank of Cooperatives, and to the Production Credit Corporation of Berkeley, are taxable under the Retail Sales Tax Act of 1933.

The plaintiff in this action is a dealer in office furniture and equipment, and during the year 1933, sold to the banks mentioned herein, office furniture and equipment of the total value of $26,508.36, upon which the tax computed according to the Act of 1933, amounted to the sum of $662.70. This tax was paid under protest, and judgment was had for its recovery.

Section 3 of the Retail Sales Tax Act, *supra,* so far as pertinent here, reads as follows: "For the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers at the rate of 2½ per cent of the gross receipts of any such retailer from the sale of all tangible personal property sold at retail in this state, on and after August 1, 1933, and to and including June 30, 1935."

Section 5 of the act contains the following exemptions, to wit: "The gross receipts from sales of tangible personal property, which this state is prohibited from taxing under the Constitution or laws of the United States of America or under the Constitution of this State." Further exemptions are specified, but have no bearing upon the issues here presented.

Section 8½ of the act imposes the tax upon the retailer, but allows the retailer to collect from the consumer, so far as it can be done, the amount of the tax.

Section 9 of the Retail Sales Tax Act, *supra,* makes the tax a direct obligation upon the retailer.

The plaintiff's position is that the assessment of the tax is contrary to the provisions of section 5, *supra,* and also violates the Constitution and laws of the United States. The appellants' contention is to the effect that section 5, *supra,* does not provide for an exemption of the tax on gross receipts from sales made to federal instrumentalities such as the four

banks herein mentioned, and that neither the federal Constitution nor the state Constitution, nor laws, prohibit the imposition of the tax.

The act of the legislature referred to purports to be an act imposing a tax on retailers for the privilege of selling tangible personal property. Adopting the same theory the courts hold that the tax is upon the retailer and not upon the consumer. (*People* v. *Herberts of Los Angeles,* 3 Cal. App. (2d) 482 [39 Pac. (2d) 829]; *Roth Drug, Inc.,* v. *Johnson,* 13 Cal. App. (2d) 720 [57 Pac. (2d) 1022].) The four banks referred to were organized and established pursuant to different acts of Congress providing for the establishment of such institutions.

Section 931 of the Federal Farm Loan Act of July 17, 1916, which is applicable to all four of the banks herein mentioned, reads, in part, as follows: "Federal Land Banks, National Farm Associations, mortgages and bonds are instrumentalities of government. . . . Every Federal Land Bank and every National Farm Loan Association, including the capital and reserve or surplus therein, and the income derived therefrom shall be exempt from federal, state, municipal and local taxation, except taxes upon real estate held, purchased or taken by the bank or association under the provisions of Sections 761 and 781 of this Chapter."

Section 1111 of the act provides that "privileges of tax exemption accorded under Section 931 shall apply also to each Federal Intermediate Credit Bank, including its capital, reserve, or surplus, and the income derived therefrom, and the debentures issued under this title shall be deemed and held to be instrumentalities of the government and shall enjoy the same tax exemptions as are accorded farm loan bonds in said section."

Section 1138c of the Act of 1933 (12 U. S. C. A. 1935, Supp., p. 261), provides for tax exemptions as to the Central Bank of Cooperatives, Production Credit Corporations and Banks for Cooperatives, as follows: "Such banks, associations, and corporations, their property, their franchises, capital, reserves, surplus, and other funds, and their income, shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing

authority; except that any real property and any tangible personal property of such banks, associations, and corporations shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed.''

■ That Congress has the power to create or cause to be created, corporations which act as governmental instrumentalities to at least a limited extent, and clothe such instrumentalities with exemption from taxation, appears to be well established. The principle apparently goes further and holds that governmental instrumentalities are not subject to state taxation unless expressly so specified by an act of Congress. This doctrine was first enunciated in the case of *McCulloch* v. *Maryland,* 4 Wheat. (U. S.) 316 [4 L. Ed. 579], where it was held that the state of Maryland had no power to tax a national bank. At the date when this question arose and was presented for consideration there was no federal statute permitting such taxation.

While the later cases show that in establishing federal instrumentalities the practice appears to be for Congress to fix certain limits as to immunities from taxation, these cases, however, and the acts of Congress so far as we read them, do not minimize or in anywise limit the effect of the decision in *McCulloch* v. *Maryland, supra.* The effect of such limitations and specifications as to what property may be held immune, and what property may be taxed, only definitely prescribes the rights and liabilities of the instrumentalities established under the particular acts of Congress. In other words, if the act is silent both as to immunities and to taxation privileges, the doctrine enunciated in *McCulloch* v. *Maryland, supra,* would seem to apply.

The excerpts from the acts of Congress under which the four banks involved in this action were organized and existing, contain no mention of any taxation other than what is ordinarily denominated as a ''property tax'', and we find therein no language which would tend to authorize by the states the imposition of what is termed an ''excise tax'' or a ''privilege tax'' upon such institutions for doing business. That a ''sales tax'' is an ''excise tax'' or a ''privilege tax'' has been definitely decided by the Supreme Court of this state. (*Pacific Gas & Elec. Co.* v. *Roberts,* 168 Cal. 420 [143 Pac. 700].)

■ That the act of the legislature purporting to make this excise tax a direct obligation upon the retailer does

not in anywise, in view of section 8½ of the same act, lift the burden imposed upon the purchaser. In other words, by that section the privilege of purchasing tangible personal property is contingent upon payment of the excise tax. In the instant case the imposition of the tax would amount to a limitation upon the privilege of governmental instrumentalities in the equipment and preparation for doing business.

That the four banks involved herein are governmental instrumentalities is settled by the decision of the United States Supreme Court in the case of *Smith* v. *Kansas City Title & Trust Co.*, 255 U. S. 180 [41 Sup. Ct. 243, 65 L. Ed. 577], even though the major portion of the business transacted by the respective banks is essentially with private individuals, or what might be called a ''private business''. The fact that the seller and not the purchaser is required to report and make payment to the state, has been held to be immaterial. The excise tax, as we have shown, is passed on and becomes an added burden upon the purchaser. That it is immaterial as to who makes the report and pays the tax to the state, we gather from the language of the Supreme Court of the United States in *Panhandle Oil Co.* v. *Mississippi*, 277 U. S. 218 [48 Sup. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583] ; *Wagner* v. *Covington*, 251 U. S. 95 [40 Sup. Ct. 93, 64 L. Ed. 157] ; *Indian Motorcycle Co.* v. *United States*, 283 U. S. 570, 572 [51 Sup. Ct. 601, 75 L. Ed. 1277, 1281]. In the Panhandle case there was involved the selling of gasoline to be used by the United States fleet, and upon which the state of Mississippi purported to collect an excise tax. The Supreme Court held the exaction valid as a privilege tax ; that the sale to the agents of the fleet or officers of the fleet for the use of the fleet was not a tax upon the instrumentalities of the federal government. This holding was reversed by the Supreme Court, and in the decision of the case it was set forth, as we have above stated, that it is immaterial that the seller and not the buyer is required to report and make payment to the state. Sale and purchase constitute a transaction by which the tax is measured and on which the burden rests.

A like ruling was held in the case of *Indian Motorcycle Co.* v. *United States, supra,* and which case seems to us decisive here. Sale was made of motorcycles by a manufacturing corporation for the police department of the city of Westfield, a municipal corporation. The tax was claimed by the United States under

its revenue laws. The Supreme Court pointed out that under our dual system of government that the instrumentalities, means and operations whereby the United States exercises its governmental powers, are exempt from taxation by the state, and that by the application of the same principle the exemption applies in favor of states from taxation by the United States. The motorcycles purchased by the city of Westfield were for use in its governmental capacity, and were therefore held to be exempt from the tax. The substance of the decision is that the sale of motorcycles to a state agency, such as a municipal corporation, for use in its police service, is not subject to taxation by the United States. The maintenance of a police service by such a state agency, like the maintenance of a coast-guard service by the United States, is a governmental function, and that function extends in one instance as much as in the other to the purchase of equipment and supplies needed to render the particular service efficient. In the case at bar the furniture and office equipment purchased by the banks would come under a like classification, as being necessary for the efficient conduct of their business.

The appellant calls our attention to the cases of *South Carolina* v. *United States*, 199 U. S. 437 [26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737], *Helvering* v. *Powers*, 293 U. S. 214 [55 Sup. Ct. 171, 79 L. Ed. 291], and *Ohio* v. *Helvering*, 292 U. S. 360 [54 Sup. Ct. 725, 78 L. Ed. 1307], where the right of the United States government to collect a tax upon liquor sold through the agency of what we will call dispensaries, was involved. The instrumentalities concerned in these actions, however, are and were in no sense governmental instrumentalities, and are readily distinguishable from cases where governmental powers are being exercised, or are authorized to be exercised, and constitute a part of the business of the instrumentality. In other words, there had been an embarking upon private business, to wit, the sale of intoxicating liquor, and that being the case, the tax was held to be collectible.

We do not find anything in the case of *Educational Films Corp.* v. *Ward*, 287 U. S. 379 [51 Sup. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226], which bears upon the issues tendered for our consideration. The tax involved in that case was upon income received from royalties under a United States patent, all of which makes the case readily distinguishable.

In *Federal Land Bank* v. *Priddy,* 295 U. S. 229 [55 Sup. Ct. 705, 79 L. Ed. 1408], there was involved the question of whether certain property of the bank was or was not immune from attachment. The court held that although the bank was a federal instrumentality, it was nevertheless subject to judicial process, and that immunity from attachment was not granted by implication. It was further said: "Federal Land Banks are instrumentalities of the Federal Government, and so far as they partake of the sovereign character of the United States, are subject to suit and judicial process only as Congress may determine." It is further said in that case that immunity of corporate governmental agencies from suit and judicial process is less readily implied than immunity from taxation. This resulted from what was said in the case of *McCulloch* v. *Maryland, supra,* that the power to tax is the power to destroy. Under the acts of Congress relating to the establishment of Federal Land Banks, such institutions, under certain circumstances, are authorized to acquire real estate and dispose of the same in their own right.

One of the latest cases having any bearing upon the questions involved herein is that of the *Federal Land Bank of Columbia* v. *State Highway Department of State of South Carolina,* 172 S. C. 174 [173 S. E. 284]. In that case the action was to recover money paid under protest on account of the privilege tax levied upon automobiles. These automobiles were used in the business of the bank. Judgment went in favor of the bank. In the opinion in this case we find the following: "As far back as *McCulloch* v. *Maryland,* 4 Wheat. 316 [4 L. Ed. 579], the Supreme Court of the United States held, and has consistently held ever since, that the instrumentalities of the Federal Government are exempt from State taxation. (See, also, *Educational Films Corp.* v. *Ward,* 282 U. S. 379 [51 Sup. Ct. 170, 75 L. Ed. 400, 71 A. L. R. 1226], and cases there cited.)" This opinion also quotes from the opinion in the South Carolina case, *supra,* as follows: "It is admitted that there is no express provision in the Constitution that prohibits the general government from taxing the means and instrumentalities of the state, nor is there any prohibiting the states from taxing the means and instrumentalities of the general government. In both cases the exemption rests upon necessary implication, and is upheld by the great law of self-preservation, as any government whose means employed in

conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government.''

The case of Willcuts v. Bunn, 282 U. S. 216 [51 Sup. Ct. 125, 75 L. Ed. 304, 71 A. L. R. 1260], involved income tax upon the profit gained by buying and selling government securities. While it is held that the securities were exempt from the income tax, the profits in the dealing of the same were entirely separate and distinct. We find nothing in that case applicable here. We think the same is true of the earnings of civil engineers mentioned in some of the other cases cited by the appellants.

The impositions involved herein, claimed under the Retail Sales Tax Act, *supra*, being an excise tax, and therefore a burden placed upon the privilege of doing business or preparing to do business by governmental agencies, constitutes, to the extent of the tax, an unauthorized limitation of that privilege. The extent of the burden we think immaterial. We therefore conclude that, so far as the excise tax is concerned, calculated upon the price of office equipment purchased by the four banks, was and is invalid, and that the same having been paid under protest, the plaintiff is entitled to recover same.

The judgment is therefore affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 17, 1937.