### STEWART v. UNITED STATES.
### No. 9100.

Circuit Court of Appeals, Ninth Circuit.
Aug. 30, 1939.

W. Glenn Harmon, of San Francisco, Cal., Ernest L. Wilkinson, of Washington, D. C., and J. Edward Johnson, of San Francisco, Cal., for appellant.

James W. Morris, Asst. Atty. Gen., Sewall Key, Berryman Green, and Joseph M. Jones, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

During the year 1930 the appellant purchased bonds of the Kansas City Joint Stock Land Bank, issued under the provisions of the Federal Farm Loan Act of 1916, for the sum of $504,275.74. These bonds were of the par value of $886,000, and bore accrued and unaccrued interest coupons. In 1931 the appellant surrendered the said bonds to the receiver of the Kansas City Joint Stock Land Bank and received therefor the sum of $580,636.69.

Prior to 1931 the appellant purchased bonds, with interest coupons attached, of the Bankers Joint Stock Land Bank of Milwaukee, issued under the provisions of the said Federal Farm Loan Act, of the par value of $90,000, paying therefor the sum of $19,335. In 1931 the appellant sold said bonds for $27,250.

The total amount received by the appellant from the bonds surrendered to the receiver of the Kansas City Joint Stock Land Bank exceeded the total amount paid therefor by $76,360.95; the total amount received by petitioner and his wife upon the sale of the bonds of the Bankers Joint Stock Land Bank exceeded the amount paid therefor by $7,915. Both banks were in receivership at the time the appellant purchased the bonds and neither was paying interest. The purchases were made for the prospective increment and not for their interest.

From the time of the passage of the Farm Loan Act in 1916, the Federal Farm Land Board issued various circulars and bulletins to acquaint the public with the Act and with the advantages of Federal farm loan bonds, which contained statements that the bonds and their income were "free from all forms of taxation," including "income tax and all forms of State and municipal tax of every kind and character," etc. Mr. Stewart, acting for himself and his wife, saw and studied these and other circulars, none of which negatived or restricted the language above quoted. He relied upon these statements in making his purchases, reasonably believing he was purchasing securities the profit upon which, in case of sale, would be exempt income.

In making his income tax return for the year 1931, the year in question, Stewart divided his income between himself and his wife pursuant to the community property law of the state of California. Identical returns were filed. The appellant managed all business dealings for the community.

Prior to filing income tax returns for 1931, appellant sought a ruling from the Commissioner of Internal Revenue that the income so derived from these bonds was exempt income. The Commissioner ruled it was taxable income and appellant included it in the returns, but simultaneously filed a protest. The appellant paid the tax and made claim for refund, which was rejected.

Complaint for refund of the income tax allegedly erroneously assessed against the appellant was filed in the court below (28 U.S.C.A. § 41(5) and (20)); judgment was entered in favor of defendant, from which this appeal is taken. The opinion of the court below is reported in 24 F.Supp. 145. The question presented by this appeal is whether the gain realized upon the sur-

render and sale of the bonds involved herein is exempt from federal income taxation by reason of Section 26 of the Farm Loan Act of 1916, 39 Stat. 360, 380, 12 U.S.C.A. § 931. As heretofore noted, the bonds in question were issued under the provisions of the Federal Farm Loan Act of 1916, section 26 of which reads in part as follows: "That every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank or association under the provisions of section eleven and section thirteen [sections 761 and 781] of this Act [chapter]. First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the provisions of this Act [chapter], shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the *income derived therefrom* shall be exempt from Federal, State, municipal, and local taxation." (Italics supplied.)

The bonds referred to recited: "This bond is issued under the authority of the Act of Congress approved July 17, 1916, which provides that 'farm loan bonds issued under the provisions of this Act shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal and local taxation.'"

The applicable provisions of the Revenue Act of 1928, under which the tax complained of was assessed, are set forth in the margin, as is a pertinent provision of the Revenue Act of 1938.[1]

The appellant contends that the gains realized were exempt from income tax by virtue of Section 26 of the Federal Farm Loan Act of 1916, falling within the phrase "income derived therefrom" used in the said section of the Act, and as the word "income" is construed and defined by judicial decisions; that Section 26 was not amended or superseded by the Revenue Act of 1928 or prior revenue laws; that no revenue act until 1938 amended or superseded section 26 of the Act of July 17, 1916.

The appellee argues that gain derived from dealings in bonds is not income derived from the bonds; that the Revenue Act of 1928 exempts from taxation only the interest paid on such bonds; and that the decision of the Supreme Court of the United States in Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260 is controlling. On this case the decision of the court below is based.

The taxpayer is before us claiming an exemption. The rule is that an exemption from taxation is an extraordinary grace of the sovereign and a taxpayer claiming an exemption or deduction must be able to point to an applicable statute and show that he comes within its terms. White et al. v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172;

"§ 22. *Gross income.*

"(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"(b) *Exclusions from Gross Income.* The following items shall not be included in gross income and shall be exempt from taxation under this title:
*       *       *       *       *
"(4) *Tax-free interest.* Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (B) securities issued under the provisions of the Federal Farm Loan Act, or under provisions of such Act as amended; or (C) the obligations of the United States or its possessions. * * *" 26 U.S.C.A. § 22(a), (b) (4).

52 Stat. 447, 578. (1938)

"Sec. 817 [§ 931a]. *Income from obligations and mortgages issued by joint-stock land banks.*

"Notwithstanding the provisions of section 26 [931] of the Federal Farm Loan Act, as amended, in the case of mortgages made or obligations issued by any joint-stock land bank after the date of the enactment of this Act, all income, except interest, derived therefrom shall be included in gross income and shall not be exempt from Federal income taxation." 12 U.S.C.A. § 931a.

New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348; Cornell v. Coyne, 192 U.S. 418, 431, 24 S. Ct. 383, 48 L.Ed. 504; Dodge v. Comm'r of Corps. and Taxation, 273 Mass. 187, 174 N.E. 109, 111. Section 26 of the Farm Loan Act of 1916, supra, relied upon by the taxpayer, specifically states that Federal Farm Loan Bonds "and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation." " 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets, * * *." Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570. See Doyle v. Mitchell Brothers Co., 247 U.S. 179, 185, 38 S.Ct. 467, 62 L.Ed. 1054; Merchants' Loan & Trust Co. v. Smietanka, 255 U.S. 509, 519, 520, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305; Taft v. Bowers, 278 U.S. 470, 481, 49 S.Ct. 199, 73 L.Ed. 460, 64 A.L.R. 362; MacLaughlin v. Alliance Ins. Co., 286 U.S. 244, 249, 52 S.Ct. 538, 76 L.Ed. 1083. It thus clearly appears that "income" includes both interest and gain realized through dealing in bonds or other property. See Magill, Taxable Income, 1936, pp. 17, 70.

■ In the absence of indication of contrary intention, it is to be assumed that the legislative body gave to the word "income" the common, every-day meaning which the word has been given in the decisions above noted. If the Congress meant "interest," we are confident that word would have been used. The word "interest" is used in Section 22 of the Act, 26 U.S.C.A. § 22, not less than 6 times; the same section speaks of the purchase of farm loan bonds at below par, while Section 27, 12 U.S.C.A. §§ 942, 943, permits Federal Reserve and member banks to *buy and sell* farm loan bonds. The first sentence of Section 26 exempts every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein *and the income derived therefrom* from Federal, State, etc., taxes, while the second sentence includes the exemption of bonds, such as those here involved, and the income derived therefrom in the exemption. (The Section is set out supra.) The General Counsel of the Bureau of Internal Revenue rendered an opinion under date of April 3, 1933, in a case involving the Des Moines Joint Stock Land Bank, in the course of which he said: "It would be inconsistent to define the words 'income derived therefrom' found in the third line of section 26, to include profits or gains, while at the same time defining the same words found in the tenth line of the same section, to include only interest." That reasoning continues sound.

The tax was assessed under the Revenue Act of 1928, which was broad enough to include the tax in question if Section 26 was not controlling (Superintendent of Five Civilized Tribes v. Commissioner, 295 U.S. 418, 420, 55 S.Ct. 820, 79 L.Ed. 1517), and it therefore becomes of importance to inquire whether that act repealed or superseded Section 26 in any manner and, if so, to what extent. Section 22 of the Revenue Act of 1928, heretofore set forth, provides, in subdivision (a) thereof, that " 'Gross income' includes gains, profits, and income derived from * * * dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * *." Subdivision (b) (4) of said Section 22 provides, among other things that interest upon "securities issued under the provisions of the Federal Farm Loan Act, or under provisions of such Act as amended," "shall not be included in gross income and shall be exempt from" income taxation.

■ There is nothing in Section 22 of the Revenue Act of 1928, so far as is apparent or has been pointed out to us, which indicates an intention on the part of the Congress to repeal or supersede Section 26 of the Farm Loan Act. The Revenue Act of 1928 is a general taxing statute designed to apply generally to the whole field, while the particular sentence of Section 26 of the Farm Loan Act, with which we are concerned, applies specifically to the income derived from farm loan bonds. According to correct rules of statutory construction, the general is not held to supersede the specific in the absence of a definite, expressed intention. No such intent is here expressed. "The cardinal rule is that repeals by implication are not favored." Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351. See, also, Southeastern Alaska Mining Corp. v. Zavodsky, 9 Cir., 60 F.2d 24, 25.

■ "It is a canon of statutory construction that a later statute, general in its terms and not expressly repealing a prior

special statute, will ordinarily not affect the special provisions of such earlier statute. In other words, where there are two statutes, the earlier special and the later general,—the terms of the general broad enough to include the matter provided for in the special,—the fact that the one is special and the other is general creates a presumption that the special is to be considered as remaining an exception to the general, and the general will not be understood as repealing the special, unless a repeal is expressly named, or unless the provisions of the general are manifestly inconsistent with those of the special." Rodgers v. United States, 185 U.S. 83, 87, 88, 22 S.Ct. 582, 583, 46 L.Ed. 816. See, also, Movius v. Arthur, 95 U.S. 144, 146, 24 L.Ed. 420. There is here no irreconcilable conflict; both statutes may be enforced without violence to either. Town of Red Rock v. Henry, 106 U.S. 596, 601, 602, 1 S.Ct. 434, 27 L.Ed. 251; Graham & Foster v. Goodcell, 282 U.S. 409, 425, 426, 51 S.Ct. 186, 75 L.Ed. 415. "Where both acts are affirmative, and the substance such that both may stand together, both are held to be in force." United States v. Gillis, 95 U.S. 407, 416, 24 L.Ed. 503.

Then, too, we must take into consideration the administrative interpretation, as evidenced by the opinion of the General Counsel of the Bureau of Internal Revenue April 3, 1933, in the Des Moines Joint Stock Land Bank matter, mentioned above, in which he states his conclusion that "income derived therefrom" includes profits or gains.

Moreover, we have the Congress, by Section 817 of the Revenue Act of 1938, 52 Stat. 447, 578, 12 U.S.C.A. § 931a, expressly repealing or amending Section 26 of the Farm Loan Act by declaring that "all income, except interest, derived" from such bonds, shall be included in gross income. If such income was taxable despite Section 26 prior to the Revenue Act of 1938, what was the reason for Section 817 of the latter act? The answer is obvious —under the statutes that income was theretofore exempt. Cf. Brewster v. Gage, 280 U.S. 327, 337, 50 S.Ct. 115, 74 L.Ed. 457. In this Section 817 the Congress said what it could have said in 1916 or in 1928, or any year, but did not. The enactment of the act in 1938 was no idle gesture but was necessary to change the proper construction of the law as it stood prior thereto.[2] "This was the explicit and intelligible declaration to which the public was entitled * * *." when the Congress decided to terminate the exemption theretofore granted. State of South Carolina ex rel. Wagner v. Stoll, 84 U.S. 425, 436, 17 Wall. 425, 21 L.Ed. 650. This was the specific amendment or repeal of Section 26 and the attempt to argue that the same result had already been accomplished by the Revenue Act of 1928 is futile.

Satisfied that Section 26 of the Farm Loan Act of 1916 provided for the exemption here claimed and that it was not repealed, amended or superseded by the Revenue Act of 1928, but continued applicable to gains of the type here in question until withdrawn by Section 817 of the Revenue Act of 1938, we pass now to a consideration of the decision of the Supreme Court of the United States in Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304, 71 A.L.R. 1260, upon which rested the decision of the court below, and, as well, the argument of the appellee. We would feel constrained to follow the rule of Willcuts v. Bunn, supra, were it not for the difference with respect to facts which requires us to distinguish the instant case from the Willcuts case. To illustrate: In 1919 and 1920 Bunn purchased for cash, as investments, bonds issued by various counties and cities in the state of Minnesota, selling them in January, 1924, and realizing a profit there-

---

[2] "This section subjects to Federal income taxation the capital gain realized by a joint-stock land bank on the purchase of its own obligations or of mortgages made by it. It has been brought to the attention of the committee that these banks have been purchasing their own bonds at below par and issuing new bonds at or above par. Gain realized on such a purchase is, under the law, taxable income and in the case of an ordinary corporation, is taxed. Under the Federal Farm Loan Act, however, which governs the taxability of obligations of joint-stock land banks, such income is exempt. The committee is of the opinion that such income ought to be taxed. A similar situation exists with respect to mortgages issued by such banks and acquired at less than cost. For constitutional reasons the provision is confined to gain realized upon bonds and mortgages issued after and acquired after the date of the enactment of the bill." Report of Senate Finance Committee, p. 47.

on. The Commissioner assessed an income tax upon this net profit, which Bunn paid under protest, later claimed a refund upon the ground that the tax was illegal because assessed upon income from municipal bonds. The claim was rejected and suit brought against the Collector. Demurrer to the complaint was overruled and, defendant having declined to plead further, judgment was entered for plaintiff. The Circuit Court of Appeals, 35 F.2d 29, affirmed and the Supreme Court granted certiorari. The Supreme Court said, 282 U.S. at pages 223, 224, 227 and 228; 51 S.Ct. at page 126, 75 L.Ed. 304, 71 A.L.R. 1260:

"The Revenue Act of 1924 * * * clearly authorized the tax. The act included in the term 'gross income' the gains and profits derived from 'sales, or dealings in property, whether real or personal.' * * * The act gave an express exemption to 'interest upon the obligations of a State, Territory, or any political subdivision thereof,' but this exemption was not extended to profits realized on the sale of such obligations * * *.

"The authority of the Congress to lay a tax on the profit realized by an investor from the sale or conversion of capital assets in general is not open to dispute and is not disputed. * * * The question raised here is not because the securities sold were capital assets but because they were governmental in character.

" * * * The present case is simply one of profit obtained from purchase and sale, *without qualification by any special circumstances*. [Emphasis supplied.]

* * * * * *

"But it does not follow, because a tax on the interest payable on state and municipal bonds is a tax on the bonds and therefore forbidden, that the Congress cannot impose a nondiscriminatory excise tax upon the profits derived from the sale of such bonds. The sale of the bonds by their owners, after they have been issued by the State or municipality, is a transaction distinct from the contracts made by the government in the bonds themselves, and the profits on such sales are in a different category of income from that of the interest payable on the bonds. Because the tax in question is described as an 'income tax' and the profits on sales are included in 'income,' the distinction is not lost between the nature of a tax applied to interest and that of a tax applied to gains from sales. The federal income tax acts cover taxes of different sorts. [Cases cited.] The tax upon interest is levied upon the return which comes to the owner of the security according to the provisions of the obligation and without any further transaction on his part. The tax falls upon the owner by virtue of the mere fact of ownership, regardless of use or disposition of the security. The tax upon profits made upon purchases and sales is an excise upon the result of the combination of several factors, including capital investment and, quite generally, some measure of sagacity; the gain may be regarded as 'the creation of capital, industry and skill.' "

The decision then goes on to state that a tax upon the profits of such sales did not lay such a burden on the exercise of a State's borrowing power as to make unconstitutional the imposition of an income tax thereon by the Federal Government.

The present case is distinguished from the Willcuts case, in that in the Willcuts case the obligations were those of a State and there was no *specific* provision of exemption, while in the present case the obligations were issued under a *specific statute* of the United States which provided for the exemption of *income* derived therefrom.

Other cases cited by appellee are readily distinguishable. In Igleheart v. Commissioner, 5 Cir., 77 F.2d 704, 712, Federal Farm Loan Bonds were included in the gross estate of the decedent (Igleheart and others were executors of the estate) subject to the estate tax. The levied and collected tax was not on income; a few lines from the decision will serve to explain the court's position.

"The estate tax is not a tax on property. It is an excise on the privilege of transmitting property of a decedent upon his death; the amount of the tax being measured by the value of the property transmitted. * * * The provision exempting from taxation Federal Farm Loan bonds and the income therefrom is not violated by measuring the estate tax by the value, at the time of the decedent's death, of all of his property, including such bonds, as the United States may tax the transmission of property upon the death of its former owner, regardless of the character of that property." Citing Plummer v. Coler, 178 U.S. 115, 20 S.Ct. 829, 44

L.Ed. 998, and Murdock v. Ward, 178 U.S. 139, 20 S.Ct. 775, 44 L.Ed. 1009, also cited by the appellee.

United States Trust Co. of New York v. Commissioner, 2 Cir., 98 F.2d 734, involved the inclusion in gross estate of proceeds of a war risk insurance policy, and there likewise the tax was upon the right to transfer property at death, which is comparable to the Igleheart case immediately above. In Phipps v. Commissioner, 10 Cir., 91 F.2d 627, 112 A.L.R. 1441; Hamersley v. United States, Ct. Cl., 16 F.Supp. 768, and Central Hanover Bank & Trust Co. v. United States, Ct. Cl., 14 F.Supp. 541, the exemption from taxation extended only to principal and interest, not to "income".

While not of importance to the case at hand, it is interesting to note that the Supreme Court of the United States held invalid a recording tax upon mortgages in the state of Alabama, so far as the tax affected mortgages of the Federal Land Banks in that state (Federal Land Bank v. Crosland, 261 U.S. 374, 43 S.Ct. 385, 67 L.Ed. 703, 29 A.L.R. 1) and the District Court of Appeal in California held the State sales tax inapplicable to supplies purchased in that state by the Federal Land Bank. M. G. West Co. v. Johnson, 20 Cal.App.2d 95, 66 P.2d 1211.

Judgment reversed, and cause remanded.