**GRAY KNOX MARBLE COMPANY, Appellant v. EVATT, Tax Commr., Appellee.**

Board of Tax Appeals.

No. 1845. Decided November 3, 1944.

Arnold, Wright, Purpus and Harlor, Columbus, on behalf of the appellant.

Hon. Thomas J. Herbert, Atty. Genl. of Ohio, Columbus, and A. A. Cartwright, Asst. Atty. Genl., Columbus, on behalf of the appellee.

## ENTRY

This cause came on to be heard upon the appeal of Gray Knox Marble Company, a Delaware corporation with its principal office and place of business in Knoxville, Tennessee, from a tax assessment made against it by the tax commissioner in the sum of $1182.32, including a penalty of $154.22. This cause was heard and submitted upon the transcript of proceedings before the tax commissioner, the evidence and briefs of counsel.

The evidence shows that on June 17, 1938, The Ferro Concrete Construction Company as principal contractor, entered into a contract with the First National Bank of Cincinnati, Ohio, on a cost plus basis for remodeling the ground, first and mezzanine floors of the bank building. On June 30, 1938, the appellant as a subcontractor, entered into a contract with The Ferro Concrete Construction Company whereby appellant, for the consideration of the payment to it by said construction company of a lump sum, agreed to furnish the labor and materials necessary to complete the marble work in said building. After the completion of said subcontract an assessment was made against the appellant based upon the contract price. Thereafter a breakdown was made of the cost of the labor and materials which were incurred in the performance of said subcontract, which items are as follows:

| | | |
|---|---|---:|
| 1. | Labor at Knoxville (Fabrication of Marble) | $ 8,877.65 |
| 2. | Cincinnati labor, installation, etc. | 10,551.86 |
| 3. | Marble cost | 21,132.60 |
| 4. | Freight | 1,536.84 |
| 5. | Plaster and other supplies purchased in Cincinnati | 4,234.33 |
| 6. | Workmen's Compensation and Insurance | 165.25 |
| 7. | Paid to contractor | 668.43 |
| 8. | Miscellaneous | 1,294.74 |
| 9. | Social Security and Unemployment Insurance | 422.07 |
| | Total | $ 48,883.77 |

On rehearing, items Nos. 2, 4, 6 and 9 were eliminated by the tax commissioner as not including materials, and the other items were held subject to the use tax, against which credit was allowed in the sum of $25.84.

Appellant claims, first, that the entire assessment is unlawful on the ground that the transaction by The Ferro Concrete Construction and the bank constituted a sale of property subject to the sales tax and that, therefore, the use tax could not apply to the materials furnished by the appellant which went into the completed job.

The other claim is that if the tax be found legal the amount thereof is excessive. The amounts of the above items are not disputed, but it is contended that item No. 1, which represents the cost of labor in fabricating marble at Knoxville, cannot be included in determining the price of such material.

Sec. 5546-25 GC, defines "consumer" as follows:

" 'Consumer' means the persons who shall have purchased tangible personal property for storage, use, or other consumption in this state."

This section also provides as follows:

" 'Purchase' means acquired for a consideration, whether the transaction by which such acquisition was effected by a transfer of title, or of possession, or of both, or a license to use or consume; whether such transfer shall have been absolute or conditional, and by whatsoever means the same shall have been effected; and whether such consideration be a price or rental in money, or by way of exchange or barter. 'Purchase' shall include production, even though the article produced be used, stored, or consumed by the producer thereof."

Sec. 5546-26 GC, levies an excise tax on the storage, use, or other consumption in this state of tangible personal property on and after the first day of January, 1936, with certain exceptions, the exception upon which appellant relies being "property the sale of which in this state is subject to the excise tax imposed by §5546-1 GC and succeeding sections of the General Code".

Appellant's contention which it makes with reference to the first claimed error is the same contention that was made in **Volk v Evatt, Tax Commr., 142 Oh St 335,** wherein the court held:

"Under the provisions of §§5546-1 to 5546-50 GC, inclusive,

a subcontractor engaged in the business of manufacturing, assembling and installing heating units or furnaces in dwelling houses constructed by general contractors is liable for sales and use taxes on materials purchased and used by him in his business."

In that case appellant, as here, contended that he was not the consumer of the materials purchased and used by him in his business. The court said:

"The appellant insists that at no time did he intend to use for his own consumption any of the various materials embodied in the manufactured furnaces. He says that the 'materials were merely in his possession temporarily until they were enriched by his skill and labor and transferred to the general contractor who passed them on to the ultimate consumer.' It is of course true that the appellant himself did not use or 'consume' the completed product—the furnaces. However, it is a vastly different matter to say that he did not use or 'consume' the various materials from which he manufactured and assembled the furnances. The component parts or materials themselves were of no moment to the general contractors. Their only concern was the completed product— the furnaces or heating units which were used or 'consumed' subsequently by the occupants of the dwellings."

The appellant in that case also contended with reference to the sales tax assessment, that no retail sales were made to him under §5546-1 GC. However, the court said:

"In the purchase of the various materials the sole purpose of the appellant was to manufacture and install completed furnaces in dwelling houses in conformity with his contracts with general contractors. He resold at retail none of the individual materials he purchased, since all of them were used in the process of manufacturing and assembling."

In this case it is likewise true that the appellant did not use or consume the completed product—the completed marble work as installed in the building. However, the Board finds, as held in the Volk case, supra, that the appellant did use or consume the materials and supplies which went into the fabrication and production of the completed product, and that the sale of the individual materials with the exception hereinafter mentioned, was not subject to the Sales Tax Act and,

consequently, did not come within the above exception of §5546-25 GC.

It is noted that §5546-26 GC, contains the following provision:

"For the purpose of the proper administration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that tangible personal property purchased on or after January 1, 1936, by any person for delivery in this state is purchased for storage, use, or other consumption in this state."

With reference to the other contention, the term "price" is defined in §5546-25 GC, as follows:

" 'Price' means the aggregate value in money of any thing, or things, paid or delivered, or promised to be paid or delivered by a consumer to a seller in the consummation and complete performance of the transaction by which tangible personal property shall have been purchased for storage, use, or other consumption in this state, without any deduction therefrom on account of the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid, or any other expense whatsoever, and in the case of a consumer who produces the tangible personal property consumed 'price' shall be the usual and ordinary consideration paid for such tangible personal property."

In determining the price of the marble the tax commissioner took the actual cost to the appellant of such material, including therein the labor cost of fabricating it. The Board finds that the price of marble so determined by the tax commissioner is not unreasonable or improper.

However, it appears that item No. 5 is for plaster and other supplies purchased by the appellant in Ohio. As these sales to the appellant were made in Ohio they are clearly subject to the tax imposed by the Sales Tax Act and, therefore, such property is not subject to the use tax, and the Board is powerless to change the character of the tax. As held in the case of **Wellnitz v Evatt, 19 O. O. 330:**

"While the Board of Tax Appeals is given authority to 'affirm, reverse, vacate, or modify' tax assessments by §§5611 and 5611-1 GC, the board has no power to change the inherent nature of the assessment or to levy a tax different from that under consideration."

Consequently, the Board finds that that part of the assessment and penalty on the property the price of which is $4,324.00, is illegal, and the action of the tax commissioner in that respect is reversed. And in all other respects the action of the tax commissioner is affirmed.

The Board, therefore, finds that the amount of the use tax assessment due from the appellant is $904.49 plus a penalty of $135.67, making a total assessment of $1,040.16.

No. 1845. Decided January 15, 1945.

## ENTRY

This cause came on to be heard upon the application of the appellant to vacate and set aside the order of this Board entered herein on November 3, 1944, and for a rehearing. Said cause was heard and submitted upon said application, the memorandum in support thereof, and arguments of counsel.

The ground for said application is the same as one of the grounds upon which the appellant based its appeal, namely, that the construction contract between The Ferro Concrete Construction Company and The First National Bank of Cincinnati, Ohio, was a contract pursuant to which personal property was incorporated into an improvement which became part of real property; that the consideration for such incorporation was agreed upon, charged and paid separately from the consideration for labor performed in pursuance of such contract and, therefore, constituted a sale and was subject to the sales tax, and that, therefore, the use tax does not apply to the materials herein involved.

This Board tried to point out in its former entry that under the case of **Volk v Evatt, Tax Commr., 142 Oh St 335,** the appellant was the consumer of the materials in question; that the materials themselves were of no concern of the general contractor; that appellant resold at retail none of the individual materials it purchased; and that there was no resale of such materials, making them subject to the sales tax. Under the Volk case the consumer of the completed product was the bank. The Board adheres to this view. But assuming counsel for the appellant is correct in its construction of the law, it can have no application here since the consumer would be a national bank.

Sec. 5546-26 GC, provides in part as follows:

"The tax hereby levied does not apply to the storage, use, or consumption in this state of the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:

"1. Property the sale of which in this state is subject to the excise tax imposed by §5546-1 GC and succeeding sections of the General Code;"

Sec. 5546-2 GC, reads in part as follows:

"The tax hereby levied does not apply to the following sales: * * *

"8. Sales which are not within the taxing power of this state under the constitution of the United States."

Consequently, if such alleged sale is not within the taxing power of this state, under the Constitution of the United States it is not subject to the excise tax imposed by §5546-1 and succeeding sections of the General Code.

It is well settled that under the so-called implied immunity of the Federal constitution a national bank is an instrumentality of the United States and that a state may not tax it except in accordance with permission granted by Congress. People v. Loughman, 100 Fed. (2d) 387.

As stated in First National Bank v. Anderson, 269 U. S. 341, 70 L. Ed. 295, "National banks are not merely private moneyed institutions but agencies of the United States created under its laws to promote its fiscal affairs; and hence the banks, their property, and their shares cannot be taxed under state authority except as Congress consents and then only in conformity with the restrictions attached to its consent." See, also, Iowa-Des Moines National Bank v. Bennett, 284 U. S. 239, 76 L. Ed. 265, wherein the court held: "The Iowa-Des Moines National Bank is an instrumentality of the United States, and but for section 5219 the State would be without power to tax its shares."

The authority given to states to levy taxes with reference to national banks is contained in 12 U. S. C. A. Title 12, Sec. 548, which does not include the right to levy taxes against a national bank based on the sale to it of personal property necessary for the conducting of its banking business. In the case of M. G. West Company v. Johnson, 20 Cal. Appeals (2d) 95, 66 Pac. (2d) 1211, writ of certiorari denied, 302 U. S. 638, 82 L. Ed. 497; Rehearing denied, 303 U. S. 666, 82 L. Ed. 1123,

and in other cases it has been held that a sales tax may not be levied against a national bank for sales made to it of property necessary in the conducting of its banking business even though the primary obligation to pay for such tax is upon the seller rather than upon the bank. The Tax Commissioner, in pursuance of the law and his Rule No. 123, held exempt from the sales tax the aforementioned construction contract between The Ferro Concrete Construction Company and the First National Bank of Cincinnati.

It follows, therefore, that the property herein involved is not subject to the excise tax imposed by §5546-1 **GC** and succeeding sections of the General Code, and that the use tax applies thereto.

It is, therefore, considered and adjudged that the application of the appellant for a rehearing be, and the same hereby is, denied. And since the entry of this Board made on November 3, 1944, was set aside because of the time intervening between the filing of said application and the date of the hearing thereof, the Board now finds for the reasons set forth in said entry, that the amount of the use tax assessment due from the appellant is $904.49 plus penalty of $135.67, making a total assessment of $1,040.16. As so modified the action of the tax commissioner herein complained of is hereby affirmed.