[Civ. No. 10684. Third Dist. Mar. 3, 1964.]

WOODLAND PRODUCTION CREDIT ASSOCIATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

Koster & Kohlmeier and Bayley Kohlmeier for Plaintiff and Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, Ernest P. Goodman and Michael Traynor, Deputy Attorneys General, for Defendant and Respondent.

FRIEDMAN, J.—Plaintiff Woodland Production Credit Association is an agricultural loan cooperative incorporated under section 20 of the federal Farm Credit Act of 1933. (12 U.S.C. § 1131d.) At issue is its liability for California corporation franchise taxes for the years 1952 and 1953. These taxes were levied against the corporation according to the measure of its income, which consisted of interest on certain United States bonds owned by it. After administrative hearings, the association paid the taxes under protest and now sues to recover. The facts are stipulated. The lower court sustained the state's position, rejecting the association's claim of exemption. The latter appeals.

When the association was incorporated, it issued two classes of stock. Class B stock was purchased by farmer-members. (See 12 U.S.C. § 1131e.) Class A (nonvoting) stock was purchased by the Production Credit Corporation of Berkeley,

which was also a component of the federal farm credit system.[1] At some time prior to 1952 the Class A stock held by the Production Credit Corporation was retired, and since then the plaintiff association has been entirely owned by its farmer-members.

Plaintiff's sole business is making loans to its farmer-stockholders. During the tax years in question it did not have sufficient capital to meet the credit needs of the stockholders. It secured additional capital by borrowing money and discounting its members' notes at the Federal Intermediate Credit Bank of Berkeley. Federal regulations restricted plaintiff to the Intermediate Credit Bank as its source of credit. Like other production credit associations, plaintiff was required to invest a portion of its funds in United States bonds. All the United States bonds owned by it were pledged with the Intermediate Credit Bank as security for plaintiff's own notes and for discounted notes. These bonds of course earned interest, which was received by plaintiff as income. Legality of the California franchise tax, as measured by federal bond interest received in 1951 and 1952, is the question before us.

That the tax is measured by income which includes interest on tax-immune federal securities is not a source of objection. (*Tradesmen's National Bank* v. *Oklahoma Tax Com.*, 309 U.S. 560 [60 S.Ct. 688, 84 L.Ed. 947] ; *Pacific Co., Ltd.* v. *Johnson*, 285 U.S. 480 [52 S.Ct. 424, 76 L.Ed. 893], affirming 212 Cal. 148 [298 P. 489].) The taxpayer, however, claims that federal law exempts its "franchise" from state taxation.
 Both parties agree that the association is an instrumentality of the United States. (12 U.S.C. § 1138c.) Thus its taxability is measured by the terms of congressional consent. (*Pittman* v. *Home Owners' Loan Corp.*, 308 U.S. 21, 33 [60 S.Ct. 15, 84 L.Ed. 11, 16-17, 124 A.L.R. 1263, 1266] ; *M. G. West Co.* v. *Johnson*, 20 Cal.App.2d 95, 98 [66 P.2d 1211], cert. den. 302 U.S. 638 [58 S.Ct. 45, 82 L.Ed. 497] ; see also *Reconstruction Finance Corp.* v. *Beaver County*, 328 U.S. 204 [66 S.Ct. 992, 90 L.Ed. 1172] ; *First Federal Sav. & Loan Assn.* v. *Johnson*, 49 Cal.App.2d 465 [122 P.2d 84] ; *Columbus Production Credit Assn.* v. *Bowers*, 173 Ohio St. 97 [180

[1] In 1956 the 12 production credit corporations in the United States were merged into the existing regional federal intermediate credit banks. (Farm Credit Act of 1956; 12 U.S.C. § 1027.)

N.E.2d 1], cert. den. 371 U.S. 826 [83 S.Ct. 47, 9 L.Ed.2d 65].) ██ The governing statute is section 63 of the Farm Credit Act of 1933. (48 Stat. 267; 12 U.S.C. § 1138c.) During 1951 and 1952 it provided: "Such banks, [production credit] associations, and corporations, their property, their franchises, capital, reserves, surplus, and other funds, and their income, shall be exempt from all taxation now or hereafter imposed . . . by any State . . . ; except that any real property and any tangible personal property . . . shall be subject to . . . State . . . taxation to the same extent as other similar property is taxed. The exemption provided herein shall not apply with respect to any Production Credit Association, or its property or income after the stock held in it by the Production Credit Corporation, has been retired, . . ."

The taxpayer contends that the immunity portion of the statute exempts these associations, their "franchises" and funds from state taxation, while the consent clause (operative after retirement of stock held by the Production Credit Corporation) permits taxation of the association, its property and income, but not its franchise and funds; that the California corporation franchise tax is imposed upon the privilege of doing business in the state, and Congress did not submit this privilege to state taxation.

The claim suffers from rigid adherence to selected phraseology in derogation of the statute itself. In fixing the tax immunity of farm credit associations, Congress used fulsome and reiterative language, evidently to forestall evasionary efforts by resourceful and tax-hungry state and local agencies. (See, for example, *Southwest Washington Production Credit Assn.* v. *Fender*, 21 Wn.2d 349 [150 P.2d 983].) In consenting to taxation after retirement of federally held stock, Congress used simple and sweeping words. Not only were the association's property and income subjected to local taxation, but also the association itself. The simplicity of the language almost obscures its universality. We would be indulging in dictum to discuss forms of taxation not before us. It is difficult, nevertheless, to avoid the belief that, once these associations became farmer-owned, Congress meant to place them on a tax parity with comparable, privately held entities.

In *Austin* v. *Board of Aldermen of Boston*, 74 U.S. (7 Wall.) 694, 697 [19 L.Ed. 224, 226], the court states that congressional waiver of the tax immunity of federal instrumentalities must be clear, that every well-grounded doubt should be resolved in favor of the exemption. If this state-

ment demands that the consent statute be explicit, the present statute is equal to the demand. It permits state taxation of the association, that is, the corporation itself. The California franchise tax has exactly the required character. It is a tax upon the corporation for the privilege of exercising its franchise within the state and is measured by the corporation's net income. (Rev. & Tax. Code, § 23183; *Pacific Co., Ltd.* v. *Johnson, supra,* 212 Cal. 148, 154-155 [298 P. 489], affd. 285 U.S. 480 [52 S.Ct. 424, 76 L.Ed. 893]; *Bank of Alameda County* v. *McColgan,* 69 Cal.App.2d 464, 472 [159 P.2d 31].) Thus the tax falls within the precise and explicit language of congressional consent.

Our holding is consistent with that of the Ohio Supreme Court in *Columbus Production Credit Assn.* v. *Bowers, supra,* 173 Ohio St. 97 [180 N.E.2d 1], cert. den. 371 U.S. 826 [83 S.Ct. 47, 9 L.Ed.2d 65]. (See also, *Zeiss* v. *Brenham Production Credit Assn.,* 259 S.W.2d 299, revd. on other grds. 153 Tex. 132 [264 S.W.2d 95].)

State law is the basis for an alternate claim of nonliability. In the computation of corporate income, Revenue and Taxation Code section 24405 permits certain cooperative associations to deduct "all income resulting from or arising out of business activities for or with their members ... or when done on a nonprofit basis for or with nonmembers."[2] The taxpayer argues that bond interest was a natural incident of an activity essential to the conduct of its business (lending) activities with its members. The Franchise Tax Board, on the other hand, takes the position that the taxpayer's interest from federal bonds was income which it received from business done with the United States government, a nonmember; thus, since the statute permits deduction of nonmember income only "when done on a nonprofit basis," the deduction is not available.

---

[2]Section 24405 is the second of three provisions dealing with deductibility of income of cooperatives. Section 24404 applies to agricultural cooperatives. Section 24405 applies to other kinds of cooperatives, excluding most purchasing cooperatives. Section 24406 deals with purchasing cooperatives. During the tax years here in issue, section 24405 was numbered 24121n and read as follows:

"In the case of other associations organized and operated in whole or in part on a cooperative or a mutual basis, all income resulting from or arising out of business activities for or with their members carried on by them or their agents; or when done on a non-profit basis for or with nonmembers." (Cal. Stats. 1951, ch. 72, p. 308.)

According to the stipulated facts, plaintiff was in the business of making loans to its members. Its sole source of credit was the Intermediate Credit Bank. It could not invest money in securities other than United States bonds, and these in turn were pledged to the Intermediate Credit Bank as security for loans and discounted notes. We accept the position that plaintiff's investment in interest-bearing federal bonds was necessitated by the conditions under which it did business. Its purchase of bonds was not an optional investment of surplus funds.

There is no direct precedent. Cooperative corporations are subject to the California Franchise Tax Law, but are permitted a special deduction of income arising out of business activity carried on with members or conducted on a nonprofit basis with nonmembers. (Rev. & Tax. Code, §§ 24404-24406; *Security-First Nat. Bank* v. *Franchise Tax Board,* 55 Cal.2d 407, 423-424 [11 Cal.Rptr. 289, 359 P.2d 625]; McLaren and Butler, California Tax Laws of 1929, pp. 114-115; Traynor, *National Bank Taxation in California,* 17 Cal.L.Rev. 456, 493-494.) ■ Income from profit-making activities with nonmembers is excluded from deductibility and thus forms part of the tax base. Yet, income need not perforce fall into the latter classification in order to be taxable. There may be income—and we think the present kind is an example—which becomes part of the tax base, not because it consists of a profit drawn from nonmembers, but because it is entirely outside the scope of the deduction statute.

The pivotal concept in section 24405 is that of income from *business activities.* The subsidiary notions of business done (a) for or with members, or (b) on a nonprofit basis for or with nonmembers, are modifications or descriptions of this primary concept. In a general sense, any and all of the cooperative's transactions, including investment in interest-bearing securities, might be termed "business activities." The statutory phrase, however, must play a role in fulfillment of the statutory purpose. This particular statute is aimed at giving a tax benefit to cooperative associations. There must, then, be some public policy which motivated this exercise of legislative beneficence.

■ The tax exclusion or deduction of cooperatives' earnings rests on the theory that such earnings are not profits, but rather savings produced for patrons through a pooled effort. (6 Mertens, Law of Federal Income Taxation, pp. 131-

144; Packel, Law of Cooperatives (3d ed.) pp. 319-321; Patterson, The Tax Exemption of Cooperatives, pp. 11, 14, 58-69; Joplin, *Taxation of Cooperatives Under the 1962 Revenue Act*, 41 Texas L. Rev. 908-909; cf. Cal. Corp. Code, § 12201.) Although these savings are usually distributed as patronage dividends, they constitute in theory a downward adjustment in the price of the product the cooperative sells or the service it furnishes to its patrons; or in an upward adjustment in the price of the product it markets for them. In the parlance of the corporation franchise tax law these patrons are referred to as ''members'' and as ''nonmembers'' of the association. Transactions between the cooperative and its patrons, or which it conducts as their agent, constitute its business activity, the very objective of its existence.

Interest from invested reserves or surplus is not produced by the cooperative's transactions with its patrons, hence is outside the theoretical premise which justifies the tax exclusion. Justification is especially lacking when, as is true of section 24405, deductibility does not depend on distribution of the income in the form of patronage dividends. Generally, under the federal income tax law, and under sections 24404 and 24406 of the California Revenue and Taxation Code, undistributed income forms part of the tax base, and only distributed income is deductible. (See Note 8 A.L.R.2d 925; Couper, *The Farmer, The Cooperative and The Commissioner*, 7 Hastings L.J. 143, 148-149; Joplin, *op. cit.*, 41 Texas L. Rev. at pp. 911-916.) In contrast, section 24405 permits the tax deduction even though the income may be accumulated and added to capital. In a sense, undistributed income of the cooperative belongs to its members, but their individual interests are too remote and contingent to be recognized for tax purposes. (See *Eisner* v. *Macomber*, 252 U.S. 189 [40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570]; *Caswell's Estate* v. *Commissioner of Internal Revenue*, 211 F.2d 693.) The policy of the deduction provision to permit exclusion of patrons' savings or price adjustments is especially irrelevant to income not derived from transactions between the organization and its patrons and which, for all that the law requires, may remain undistributed.

Exposed to this concept, the statutory phrase ''business activities'' applies only to the cooperative's transac-

tions with or as agent for its patrons.[3] These transactions, and these alone, are the ''business activities'' which yield income deductible under section 24405. Investment of undistributed reserves or surplus in interest-bearing securities is not a business activity for the purpose of this statute. Nor, contrary to plaintiff's suggestion, is it relevant that the investment may have been forced upon the cooperative by law or economic necessity. The statutory deduction does not turn upon the volitional character of the yield-producing investment. Consequently, plaintiff was not entitled to deduct interest from bond investments in the computation of its corporation franchise tax.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 29, 1964.

---

[3]For example, as the Franchise Tax Board concedes in this action, interest earned by plaintiff on loans to its members is deductible under section 24405.