[Civ. No. 61685. Second Dist., Div. Four. Jan. 20, 1982.]

LONG BEACH FIREMEN'S CREDIT UNION, Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

52

COUNSEL

Pizer & Michaelson and Seymour S. Pizer for Plaintiff and Appellant.

George Deukmejian, Attorney General, Edmond B. Mamer and Patti S. Kitching, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**WOODS, Acting P. J.**—At issue is the applicability of the franchise tax deduction authorized by Revenue and Taxation Code section 24405. Appellant, Long Beach Firemen's Credit Union, (hereinafter sometimes referred to as the credit union) sought refund of corporate franchise

taxes for the years 1975 and 1976, on the basis that the foregoing section authorized the deduction of certain income received from its investments. The Franchise Tax Board (hereinafter the board) denied the claim for refund. The credit union brought suit in the superior court for recovery of the taxes and following trial, judgment was entered in favor of the defendant board. This appeal followed.

The relevant statute (Rev. & Tax. Code, § 24405) authorizes a credit union to deduct from its gross income, for purposes of determining state franchise taxes owing, "all income resulting from or arising out of business activities for or with their members carried on by them or their agents; . . ." We are asked to decide whether the transaction in question was a business activity carried on by the credit union with its member, within the meaning of the statute. We have concluded that it was not.

The credit union is a state chartered credit union organized for the purpose of promoting thrift and creating a source of credit for its members, usually employees or pensioners of the Long Beach Fire Department or members of their families. In 1971, the credit union began investing its surplus funds in the International Credit Union Government Securities Program (hereinafter ICU). ICU is a program operated by the ICU Services Corporation, a wholly owned subsidiary of the Credit Union National Association, which provides for investments in United States government securities.

In 1975, the appellant requested ICU to become a member of the credit union. ICU completed the membership application and returned it with a check for $5, the required initial share deposit, and was issued a membership card and membership number. Thereafter, in 1975 and 1976, the credit union continued to invest its surplus funds in the ICU Government Securities Program, which investment generated interest income. The claimed tax refund is based on the credit union's contention that those investments amounted to business activities with a member and that the income thereby generated was deductible pursuant to Revenue and Taxation Code section 24405.

I

Appellant concedes that although income earned by credit unions is absolutely exempt from federal taxation, the California tax act is "not so liberal." The only tax deductible income recognized for state fran-

chise tax purposes is income generated by business activities with members, or nonprofit business activities with nonmembers. Thus, income from ordinary investment activities by the credit union is taxable. The credit union does not here contend that the tax paid on income from its ICU investments before ICU became a member should have been refunded. ■ The question thus presented is whether the union membership of ICU transforms this transaction from an investment into a business activity with a member, as that term is used in the statute.

■ It is helpful, first, to consider the typical activity which the Legislature intended to make deductible. A primary example is interest earned by a credit union on loans to its members. That income is deductible under section 24405. (*Woodland Production Credit Assn.* v. *Franchise Tax Board* (1964) 225 Cal.App.2d 293, 300, fn. 3 [37 Cal.Rptr. 231].) As the *Woodland* court explained, in determining whether other types of activities come within the scope of the deduction statute, it is essential to examine the public policy which motivated the "exercise of legislative beneficence" which resulted in the granting of this deduction. (*Id.*, at p. 298.) Not all business activities were intended to be covered by the statute; only those which play a role in fulfilling the statutory purpose are included. The court determined that transactions between the credit union and its members which produce savings for those members are the very objective of its existence. Such transactions would be the granting of loans to members at a lower interest rate than commercially available, or the payment of higher-than-average interest on savings deposits. Such transactions were intended to be included within the deduction statute. (*Woodland Production Credit Assn.* v. *Franchise Tax Board, supra*, 225 Cal.App.2d at pp. 298-299.) The court concluded (at p. 300): "These transactions [covered business activities with members], and these alone, are the 'business activities' which yield income deductible under section 24405. Investment of undistributed reserves or surplus in interest-bearing securities is not a business activity for the purpose of this statute." Although the investment transaction at issue here is factually different from that examined by the *Woodland* court, we are persuaded that the same principles obtain.

■ We hold that the investment of surplus funds in government securities, whether or not through the conduit of the credit union membership, is not a covered transaction within the meaning of this section.

The trial court made the following pertinent findings of fact at the conclusion of the trial, all of which are supported by the record: "During the years in question, plaintiff [the credit union] invested surplus funds for the purpose of obtaining the highest net return it could on those funds. Plaintiff did not invest in the ICU Government Securities Program in order to loan money to ICU Services Corporation at a lower rate. [¶] .... [¶] During the years in question, plaintiff invested in the ICU Government Securities Program and had an equity position in the Program. Plaintiff did not have a debtor-creditor relationship with the ICU Government Securities Program and was not lending money to the Program. [¶] During the years in question, although ICU Services Corporation was a member of plaintiff, it was different from any other member of plaintiff. ICU Services functioned as a part of a trust arrangement which received plaintiff's surplus money for investment in government securities and plaintiff was the beneficiary of this investment trust. [¶] During the years 1975 and 1976, there is no evidence that ICU Services Corporation made savings deposits with, or obtained consumer loans from plaintiff. [¶] Plaintiff and other credit unions were formed for the purpose of allowing people of like purposes to come together in a cooperative effort and benefit each other through mutual deposits and borrowing. During the years in question, plaintiff's transactions with ICU Services Corporation as a member were *not* within the scope of the activities for which plaintiff was formed."

█ In determining that the investment transaction in question is not a covered business activity, we are mindful of the following rule: "Deductions may be allowed or withheld by the Legislature as it sees fit [citations] and such deductions, like credits and exemptions, are to be narrowly construed against the taxpayer." (*Great Western Financial Corp.* v. *Franchise Tax Bd.* (1971) 4 Cal.3d 1, 5 [92 Cal.Rptr. 489, 479 P.2d 993].) Further, the burden of proof was on the taxpayer to show that the tax assessment was in error and that money paid should have been refunded. (*Sunshine Art Studios of California, Inc.* v. *State Bd. of Equalization* (1974) 39 Cal.App.3d 223, 231 [114 Cal.Rptr. 24].) The record does not demonstrate that the court erred in concluding that plaintiff did not meet its burden here. And appellant here cites no authority supporting its proposition that the subject activities are deductible, but seeks merely to distinguish the holding in *Woodland.*
█ The creation of a nominal membership in the credit union cannot serve to exclude from taxation income earned on investments in that nominal member. The policy behind section 24405 would not be served by such exemption.

## II

■ Appellant next contends that the state cannot tax income from securities of the United States government. Appellant recognizes that 31 United States Code section 742 exempts from that general rule any nondiscriminatory franchise taxes, but contends that that section is unconstitutional as applied to this case. Appellant argues that the exemption of nondiscriminatory franchise taxes authorizes the state to do indirectly that which it cannot do directly, that is to say, impose a tax on otherwise tax exempt United States securities and thus impair the ability of the United States government to raise funds.

The constitutionality of including income from otherwise tax exempt bonds in gross income for purposes of measuring the California franchise tax has already been established by courts of greater jurisdiction than ours. (See *Pacific Co. v. Johnson* (1932) 285 U.S. 480 [76 L.Ed. 893, 52 S.Ct. 424], and *Security-First Nat. Bk. v. Franchise Tax Bd.* (1961) 55 Cal.2d 407 [11 Cal.Rptr. 289, 359 P.2d 625].) Those decisions are controlling.

■ The trial court did not err in concluding that appellant's gross income for the years 1975 and 1976 includes interest income received by appellant from investing surplus funds in the ICU Government Securities Program, and that this interest income is not deductible under Revenue and Taxation Code section 24405.

The judgment is affirmed.

McClosky, J., and Weil, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.