[Civ. No. 12851.   First Dist., Div. One.   June 4, 1945.]

THE BANK OF ALAMEDA COUNTY (a Banking Corporation), Respondent, v. CHARLES J. McCOLGAN, as Franchise Tax Commissioner, etc., Appellant.

465

Robert W. Kenny, Attorney General, and John L. Nourse and Daniel N. Stevens, Deputies Attorney General, for Appellant.

George H. Koster and Bayley Kohlmeier for Respondent.

WARD, J.—The Franchise Tax Commissioner appeals from a judgment allowing plaintiff to recover taxes collected under the Bank and Corporation Tax Act (Stats. 1939, p. 2968, § 30) for the years 1938, 1939 and 1940.

The construction of section 13(k) of the act (Stats. 1929, p. 19, as amended by Stats. 1937, p. 2334; Deering's Gen. Laws, Act 8488) presents the primary question for decision. It provides: "Any bank or corporation which is dissolved and any foreign corporation which withdraws from the State during any taxable year shall pay a tax hereunder only for the months of such taxable year which precede the effective date of such dissolution or withdrawal, according to or measured by such proportionate part of the net income of the preceding income year as the number of months of the taxable year prior to the effective date of such dissolution or withdrawal bears to the entire preceding income year; provided, however, that in the case of any bank or corporation which is dissolved, or which withdraws from the State during any taxable year, the offset from the tax for the months of such taxable year prior to the effective date of such dissolution or withdrawal shall not exceed that proportion of the offset computed under section 26 which the number of said months prior to the effective date of such dissolution or withdrawal bears to the number of months of the preceding income year; and provided further, that the taxes levied under this act shall not be subject to abatement or refund because of the cessation of business or corporate existence of any bank or corporation pursuant to a reorganization, consolidation, or merger. In any event, each such corporation shall pay a tax not subject to offset for such period in an amount equal to the minimum tax provided for in section 4 of this act."

Plaintiff was a California corporation, engaged in business

as a bank in the city of Alvarado, Alameda County, from December, 1916, until April, 1938. On April 9, 1938, plaintiff ceased to operate as a bank. Its permit to do business as a bank was cancelled by the Superintendent of Banks on April 12, 1938. Assets were distributed to its shareholders on April 13th, and a certificate of election to dissolve was filed with the Secretary of State on or about April 25th.

Plaintiff did not file a certificate of dissolution as required by Civil Code, section 403c. In 1938, section 403c provided: ''(1) When a corporation has been completely wound up without court proceedings therefor, all of its known debts and liabilities actually paid or adequately provided for or paid as far as its assets permit, and its known property distributed, a majority of the directors or trustees shall sign and acknowledge a certificate stating that the corporation has been completely wound up, its known assets distributed, any tax or penalty due under the Bank and Corporation Franchise Tax Act paid, and its other known debts and liabilities actually paid or adequately provided for or paid as far as its assets permit, and that the corporation is dissolved. Such certificate shall be filed in the office of the Secretary of State and a copy, certified by him, shall be filed in the office of the county clerk of the county in which the principal office of the corporation is located. Thereupon corporate existence shall cease except for the purpose of further winding up if needed. . . . (2) In lieu of filing the certificate provided for in subdivision (1) of this section the directors or trustees, if the winding up has been accomplished without court proceedings, may petition the superior court of the county in which the principal office of the corporation is located for an order declaring the corporation duly wound up and dissolved. . . . Upon the making of such order, corporate existence shall cease except for the purposes of further winding up if needed and the directors or trustees shall be discharged from their duties and liabilities.'' Plaintiff's failure to comply with section 403c is the reason given by the commissioner for levying and collecting the taxes for the years designated.

Plaintiff took as the measure of its tax one-fourth of its net income for the year 1937, and computed the tax at 4 per cent of this figure, thus estimating its tax to be $174. This

sum was remitted with the return. In December, 1938, the commissioner under section 4a of the Bank and Corporation Franchise Tax Act determined that the rate of taxation on banks for 1938 should be 8 per cent. On December 28th, plaintiff paid an additional tax of $174.

The commissioner subsequently decided that plaintiff had not effected a dissolution in April, 1938, within the meaning of section 13(k) of the act, and therefore assessed an additional franchise tax for 1938 in the sum of $1,043.95, with interest thereon in the amount of $93.96. Plaintiff paid these assessments on June 12, 1940, under written protest.

Plaintiff filed a claim for refund on October 21, 1940, and the commissioner denied the claim on November 12, 1940. On March 31, 1941, the commissioner notified plaintiff that he had determined that its income for 1937 was $2,473.14 more than it had reported, and that he proposed to assess additional taxes for the year 1938 in the amount of $197. Payment was made under protest. In addition the commissioner assessed and collected the $25 minimum tax imposed by section 4, subdivision 5 of the act for the taxable years 1939 and 1940. He denied plaintiff's claim for refund after payment was made under protest.

It was stipulated that ''Plaintiff's net income for Franchise Tax purposes for the income year 1937 was $19,873.14. If plaintiff was liable for Franchise Tax for only three-twelfths (3/12ths) of the taxable year 1938, its correct Franchise Tax liability for said year was $397.45. If Plaintiff was liable for Franchise Tax for the entire taxable year 1938, but was liable for tax at the eight per cent (8%) rate imposed on banks for only three-twelfths (3/12ths) of the year, Plaintiff's correct Franchise Tax liability for said year was $993.65.'' It was further stipulated: ''I. Since March 1, 1929, it has been the administrative practice of the Franchise Tax Commissioner of the State of California, when a domestic bank or corporation, which desires to dissolve within a taxable year and prior to a determination by said Commissioner of the tax rate applicable to banks for that year, applies for his certificate that all taxes imposed upon it by the Bank and Corporation Franchise Tax Act of California are paid, to accept from said bank or corporation a bond or other deposit of security in an amount which he determines will be sufficient

to secure the payment of the tax which may become payable from said bank or corporation for the taxable year, and thereupon to issue his certificate that all taxes, penalties, and interest imposed by said Act upon said bank or corporation are paid or secured. II. There is no published ruling setting forth the practice described in paragraph I, and neither plaintiff nor plaintiff's counsel had knowledge of said practice. III. Plaintiff did not apply and has not yet applied to said Franchise Tax Commissioner for the issuance of his certificate that all taxes imposed upon it by said Act had been paid.''

The commissioner argues that ''An effective corporate dissolution requires not only a winding up of the corporate affairs and a surrender of the corporation's right to do business, but also an acceptance by the state of the surrender.'' He contends that the effective date of dissolution is the date on which a corporation files a certificate under section 403c, and that since neither an order of dissolution has been made nor a certificate of dissolution filed respondent is not entitled to a refund for any portion of the taxable year 1938. The following provision of section 29 of the Bank and Corporation Franchise Tax Act, as it existed in 1938, is invoked by the commissioner: ''No decree of dissolution shall be made and entered by any court, nor shall the county clerk of any county or the Secretary of State file any such decree, or file any other document by which the term of existence of any taxpayer shall be reduced or terminated, nor shall the Secretary of State file any certificate of the surrender by a foreign corporation of its right to do intrastate business in this State until the tax, penalties, and interest shall have been paid.'' (Stats. 1937, p. 2344.) It is argued that dissolution is an operative act terminating the existence of a corporation and that the purpose of the quoted provision is to require payment of taxes before the state assents to ending corporate existence.

The quoted portion of section 29 is not applicable to this case. The prorated amount of the tax, according to the bank's figures, was paid on or about April 13, 1938. In a statement attached to its tax return for the year 1938 appears the following: ''Business sold April 9, 1938 and corporation dissolved.'' The fact that a discrepancy was subsequently found is of no consequence in view of the provisions

of the Civil Code, section 403c, that the corporate existence shall continue, if necessary, for further winding up. In addition, Civil Code, section 399, provided for the continuation of a corporation after "dissolution," not for the purpose of "doing business" but, among other purposes, to "discharge obligations."

It should be mentioned that the interpretation of section 13(k) adopted by the commissioner might impose a condition which a bank could not meet. Under section 4a the rate of the tax applicable to such institutions is not fixed until December 31st of each year. This would in effect require a bank to remain in operation, or at least in existence, until the rate was determined by the commissioner.

The theory adopted by the commissioner—that there should be a formal dissolution—may, as a matter of administration, be advisable. This is indicated by the adoption of a rule that in order to facilitate dissolution the commissioner shall issue a certificate to the effect that taxes, penalties and interest imposed by the "Act" have been paid. The last paragraph of the rule (art. 29-1) provides: "Any certificate issued pursuant to this regulation will be issued on the assumption that dissolution or withdrawal of the bank or corporation will be effected on or before a specified date. The taxes required to be paid under (3) above will be computed accordingly. Generally, the date specified in the certificate will be the fifteenth of the month following the month in which the certificate is issued, although in special cases a longer or shorter period may be allowed. If, for any reason, dissolution or withdrawal is not effected on or before the date specified, the certificate shall be void, and a new certificate must be obtained." It is admitted that neither plaintiff nor his counsel had knowledge of the method devised by the commissioner to assist dissolution. ■ A practical interpretation by a governmental officer in the adoption of reasonable rules to assist in the procedural administration is entitled to great weight but is not controlling. (*Carter* v. *Commission on Qualifications,* 14 Cal.2d 179 [93 P.2d 140]; *Los Angeles County* v. *Superior Court,* 17 Cal.2d 707 [112 P.2d 10].) The rule is that administrative construction is considered when some uncertainty appears. (*Hammond* v. *McDonald,* 49 Cal.App.2d 671 [122 P.2d 332].) No ambiguity or un-

certainty appears in the statutes that requires the adoption, without legislative sanction, of the rule formulated by the commissioner. The rule without statutory authorization, is of no assistance to the cause of the commissioner. Subsequent to 1938, the year in which we are interested, the substance of the rule was codified as part of section 29. (Stats. 1939, p. 2967.) That amendment is not applicable to the 1938 taxes. Having eliminated the rule promulgated by the commissioner in 1938, any aid to sustain his position must come from the statutes above quoted.

Chapter XV of the Civil Code, embracing sections 399 to 404c, provides the necessary legal steps to be followed in terminating corporate existence. A careful reading of the sections makes it plain that a corporation may exist for the purpose of winding up its business. Its power to conduct business by contract, or incur debts, etc. may be ineffective, but its existence is not completely terminated. "If it wishes to die it may do so, but only in the way ordained by law." (*Elliott* v. *Superior Court*, 168 Cal. 727, 731 [145 P. 101].) The provisions referred to are for the protection of both the corporation and the public. A way is set up to protect creditors, which would include the state as represented by its taxing authority. "In no case is extinction now instantaneous and complete; there is a continued existence of the company to liquidate its affairs." (6A Cal.Jur. § 838, p. 1427.)

A bank or corporation dissolved during any taxable year shall pay taxes "only for the months of such taxable year which precede the effective date of such dissolution." (§ 13(k).) Plaintiff sold its business and assets; its permit to do business as a bank was cancelled; it distributed its assets to the shareholders and filed a certificate of election to dissolve. All these acts occurred in April, 1938. It is not contended that plaintiff has done any business since then. Its permit to do business as a banking corporation was formally cancelled on April 12th. When the assets were distributed to its shareholders on April 13th, plaintiff's decision to wind up became irrevocable. (Civ. Code, § 400a.) Business had ceased prior thereto, but the Secretary of State was not notified of plaintiff's election to dissolve until April 25th. From a practical standpoint, a corporation may be considered dissolved when it irrevocably loses its right to do business other than that necessary to wind up its affairs. The dissolution of the corpo-

ration herein for tax purposes was "effective." A corporation which voluntarily dissolves continues to exist only for the purpose of winding up its business. (Civ. Code, § 399.) A certificate stating the corporation's election to wind up must be filed with the Secretary of State and with the clerk of the county wherein the principal office is located. (§ 400.) When the corporation has been wound up by a final distribution of its known assets a certificate of dissolution shall be filed and the directors or trustees discharged from their duties and liabilities. (§ 403c.) The latter provision appears to be for the convenience of the Secretary of State, the public and the protection of the directors and trustees. If the corporation ceases to do business and the taxes have been paid, the tax finding body, the commission, should not be further interested.

The payment of taxes under the Bank and Franchise Act, *supra,* is, as the statute provides, for the privilege of doing business. The notice to wind up or of dissolution is a notice of intended cessation of business but is not a dissolution of the legal entity of the corporation. A certificate that the corporation "has been completely wound up" is a formal end of corporate existence "except for the purpose of further winding up if needed." (§ 403c.) The tax under consideration is not a direct tax, nor a property tax, nor a tax for the mere privilege of *being* a corporation, but is a tax for the privilege of exercising its corporate franchises. The tax may not be imposed upon a corporation still in existence which no longer enjoys the privilege of exercising such franchises; that is, the privilege of doing business for the purpose of gain and profit.

In the present case the Superintendent of Banks cancelled plaintiff's permit to do business as a bank—that is for gain and profit—on April 12, 1938. Thereafter the bank could not exercise any privilege of its corporate franchise for the purpose of "financial or pecuniary gain or profit" (§ 5) and was therefore not subject to the tax.

The minimum tax of $25 per year is also imposed for the privilege of exercising the corporate franchise as that term has been previously defined, and could not be imposed against plaintiff after its right to do business as a bank was cancelled.

Appellant contends that the benefits arising from section 13 (k) are computed upon the basis of the effective date of dissolution, not the date upon which the corporation ceases

to do business or loses its right to do so, citing *Hise* v. *McColgan*, 24 Cal.2d 147 [148 P.2d 616]. The case is not in point. In the Hise decision the business was being "liquidated," as that word appears to be used in the Building and Loan Association Act. (Stats. 1931, p. 483, § 13.11; Deering's Gen. Laws, Act 986.) The "liquidator" controls the business "for the *purpose* of financial or pecuniary gain or profit." (Italics added.) (Bank and Corporation Franchise Tax Act, § 5.) In the present case after the cancellation—in fact before—no business was transacted.

Irrespective of whether the tax is a tax upon the right to exercise its corporate franchise, or upon the actual exercise thereof, in the event of dissolution during any taxable year a bank or corporation "shall pay a tax hereunder only for the months of such taxable year which precede the effective date of such dissolution." (§ 13(k).) There is no evidence herein that the practical discontinuance of corporate existence by cessation of business was pursuant to any plan of reorganization, consolidation or merger. It was not a case of suspension but of cessation of business. In the absence of any direct provision that the tax should continue, or that "dissolution" necessitates a strict compliance with the statutory conditions (§ 403c) as a prerequisite to going out of business or relinquishing the privilege of corporate existence, cessation of business, distribution of assets and official cancellation of license rights to do business are in effect a "dissolution" as that word is used in section 13(k).

It may be appropriate to state that whatever is said herein as to the law as it then existed, is applicable to the facts in this particular case, and should not be understood as an indication that the same legal views would hold upon issues factually different. However, this should be plain—unless the Legislature ordains otherwise, a corporation which is denied the right to exist for the entire year and has irrevocably lost its right to carry on business for profit and gain, should not be held liable for a full year's tax (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N.Y. 51 [69 N.E. 124]) because it neglected to file "a certificate stating that the corporation has been completely wound up, its known assets distributed, any tax or penalty due under the Bank and Corporation Franchise Tax Act paid," etc., when it appears that the state department, as represented by the commissioner, has not been injured by

474

the failure of the taxpayer to comply with section 403c. ▮ It is the substance rather than mere form that often governs in the construction of statutes if strict adherence to form would result in an injustice. (*Carpy* v. *Dowdell*, 129 Cal. 244 [61 P. 1126]; *Leo* v. *Board of Medical Examiners*, 36 Cal. App.2d 490 [97 P.2d 1046]; *Edson* v. *Southern Pacific R. R. Co.*, 144 Cal. 182 [77 P. 894].)

The judgment is affirmed.

Peters, P. J., and Bray, J., pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 2, 1945.