**In re SUPERGRATE OPEN STEEL FLOORING CO., a California corporation, Bankrupt.**

**Bankruptcy No. 78–00812–JD.**

United States Bankruptcy Court, C. D. California.

Dec. 17, 1979.

Robert D. Bass, Stutman, Treister & Glatt, Los Angeles, Cal., for plaintiff, Norman E. Stolba, Trustee.

George Deukmejian, Atty. Gen., Patti S. Kitching, Deputy Atty. Gen., Los Angeles, Cal., for defendant, California Franchise Tax Bd.

## OPINION

JAMES R. DOOLEY, Bankruptcy Judge.

Two basic questions are here presented:

1. Does the trustee in this case have a duty to file returns and pay franchise taxes pursuant to Section 23151 et seq. of the California Revenue and Taxation Code?

2. Does this court have jurisdiction to determine the foregoing question?

On January 27, 1978 a Creditor's Petition In Involuntary Bankruptcy was filed against Supergrate Open Steel Flooring Co., a California corporation ("Supergrate"); and on March 29, 1978 Supergrate was adjudicated bankrupt. Also on March 29, 1978 attorney Norman E. Stolba was appointed receiver, and on May 15, 1978 attorney Stolba was appointed trustee.[1]

---

1. The use of the word "trustee" hereinafter will embrace attorney Stolba's position, both as receiver and as trustee.

Prior to the initiation of this bankruptcy proceeding Supergrate had been engaged in the business of the manufacture and sale of steel grating. The trustee did not operate the business of Supergrate after his appointment, nor was he authorized by the court to do so. Instead, the trustee promptly caused the assets of Supergrate to be inventoried, appraised and sold at public auction. In general, these assets consisted of office fixtures and equipment; shop fixtures and equipment; stock, consisting of raw materials, work in process, and finished goods; and vehicles.[2]

The auction sale was held on June 30, 1978, after notice to creditors and other parties in interest. The gross proceeds from the sale amounted to $72,885.05, from which the auctioneer was entitled to commissions of $3,644.25 and total expenses of $4,814.61. The sale was confirmed on July 25, 1978.

The auction sale disposed of substantially all of the assets of the bankrupt. The trustee also collected certain accounts receivable; however most of these were turned over to the Bank of America pursuant to a court-approved stipulation between said bank and the trustee relating to the bank's claimed security interests.[3]

In addition to the activities described above, the trustee deposited funds in certificates of deposit and earned interest thereon, initiated adversary proceedings, entered into stipulations, prosecuted objections to claims filed against the estate, and performed other tasks normally required of a trustee in the administration of a bankruptcy estate.

On March 3, 1978 the Franchise Tax Board of the State of California ("Board") directed a letter to the Honorable Richard Mednick, Bankruptcy Judge, a copy of which is attached to this opinion as Appendix A.[4] Attached to said letter was a copy of Franchise Tax Board Legal Ruling 407, a copy of which is attached to this opinion as Appendix B. In substance, the Board took the position that a trustee or receiver in bankruptcy who is liquidating the assets of a non-operating corporation, is required to file annual franchise tax returns and to pay the franchise tax when the returns are filed, that the franchise tax will be no less than the minimum tax of $200.00 per year, and that failure to comply may subject the trustee or receiver to personal liability.

On March 21, 1979 the trustee filed a "Motion By Trustee In Bankruptcy For Order Determining That No California Franchise Taxes Are Owing By Estate Or Trustee In Bankruptcy And That Trustee In Bankruptcy Is Not Required To Make And File Franchise Tax Returns." This motion, which was opposed by the Board, came on for hearing on May 2, 1979, at which time certain evidence was received and the court took judicial notice of all of the records, files, and pleadings in this cause. The parties also orally agreed that neither party had any further evidence to offer and that the court could proceed to a decision without affording the parties an opportunity to present any further evidence.

## JURISDICTION

■ The Board seems to contend that this court has no jurisdiction to determine the issues raised by the trustee in his motion, relying upon *In Re Statmaster Corpo-*

2. The inventory showed the office fixtures and equipment as having a value of $3,306.00; the shop fixtures and equipment as having a value of $77,086.00, the stock as having a value of $10,000.00, and the vehicles as having a value of $1,750.00, for a total inventory value of $92,-142.00. The appraiser valued the total inventory at $70,000.00.

3. The stipulation which was filed on July 7, 1978 provided for the trustee to pay to the Bank of America $7,500.00 out of the approximate sum of $9,241.18 in his possession, which

sum represented for the most part the proceeds of accounts receivable, and for the trustee to retain the balance. The trustee also abandoned all remaining accounts receivable to the Bank.

4. Judge Mednick is a bankruptcy judge of this court. An identical letter was also sent to Norman E. Stolba, Esq., who is trustee in this case. The letter sent to Attorney Stolba is a part of the record in other cases pending before this court, of which this court takes judicial notice.

*ration*, 332 F.Supp. 1248, 1249 (S.D.Fla. 1971), affirmed 465 F.2d 978 (5th Cir. 1972). However, Section 2a(2A) of the Bankruptcy Act, 11 U.S.C. § 11(a)(2A) expressly confers jurisdiction upon courts of bankruptcy to:

"Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction . . . "

The Court of Appeals for the Ninth Circuit has interpreted the above-quoted provision as conferring jurisdiction on the bankruptcy court, whether the tax arose prior to or after bankruptcy, and whether or not a proof of claim has been filed for the tax. See *Gwilliam v. United States*, 519 F.2d 407, 408–411 (9th Cir. 1975); *In Re Dolard*, 519 F.2d 282, 286 (9th Cir. 1975). In *Gwilliam* the Ninth Circuit noted that the Fifth Circuit in *Statmaster* had interpreted the legislative history of § 11(a)(2A) differently, but cited other authorities supporting its view such as *In the Matter of Century Vault Co.*, 416 F.2d 1035, 1041 (3rd Cir. 1969); *In Re Durensky*, 377 F.Supp. 798 (N.D.Texas 1974); and 3A *Collier On Bankruptcy*, 14th Edition Rev. 1972, ¶ 64.407[3] (pages 2334–35). Other courts have since adopted the Ninth Circuit's interpretation of § 11(a)(2A). See *McKenzie v. United States*, 536 F.2d 726, 728–729 (7th Cir. 1976); *Bostwick v. United States*, 521 F.2d 741 (8th Cir. 1975).

The controversy presented by the trustee's motion is real and actual. The trustee has been warned that he may be subject to personal liability if he does not comply with the franchise tax laws which the Board deems applicable; and a resolution of the issues presented is necessary before this bankruptcy proceeding may be closed.[5] This court concludes that it has jurisdiction to determine the issues.

## LIABILITY OF THE TRUSTEE FOR FRANCHISE TAXES

Section 23151 of the California Revenue and Taxation Code provides as follows:

"§ 23151. Imposition of tax on net income; rate; minimum tax

(a) With the exception of financial corporations, every corporation doing business within the limits of this state and not expressly exempted from taxation by the provisions of the Constitution of this state or by this part, shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, a tax according to or measured by its net income, to be computed at the rate of 7.6 percent upon the basis of its net income for the next preceding income year. In any event, each such corporation shall pay annually to the state, for the said privilege, a minimum tax of one hundred dollars ($100).

(b) For calendar or fiscal years ending after June 30, 1973, the rate of tax shall be 9 percent instead of 7.6 percent as provided by subdivision (a).

(c) For income years beginning after December 31, 1971, the one hundred dollars ($100) specified in subdivision (a) shall be two hundred dollars ($200) instead of one hundred dollars ($100)."

And Section 25403 of the California Revenue and Taxation Code provides in part:[6]

---

5. This court also has under submission ten other cases in which the trustee's obligation to pay franchise taxes was litigated.

6. Section 25403 was amended in 1953 to add the provisions quoted above. However, it is the view of this court that the amendment did not change pre-existing law. See, *Fifth Street Building v. McCalgon* (1941), 19 Cal.2d 143, 119 P.2d 729, appeal dismissed and certiorari denied 316 U.S. 648, 62 S.Ct. 1298, 86 L.Ed. 1731 (1942). The California legislature also added

Section 25404 in 1953 which provides as follows:

"§ 25404. Collection of tax due on returns by receivers, trustees, or assignees

Any tax due on the basis of returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the bank or corporation of whose business or property they have custody and control."

"In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of a bank or corporation such receivers, trustees, or assignees shall make returns for such bank or corporation in the same manner and form as such a bank or corporation is required to make a return.

Also, 28 U.S.C. § 960 provides that "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State, and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

■ It is clear that if the trustee in this case had conducted the business of Supergrate within the meaning of 28 U.S.C. § 960, he would have incurred obligations for franchise taxes imposed by Section 23151 et seq. of the California Revenue and Taxation Code. *Cf. Nicholas v. United States*, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966); *Boteler v. Ingels*, 308 U.S. 57, 60 S.Ct. 29, 84 L.Ed. 78 (1939); *Fifth Street Building v. McColgan* (1941), 19 Cal.2d 143, 119 P.2d 729, appeal dismissed and certiorari denied, 316 U.S. 648, 62 S.Ct. 1298, 86 L.Ed. 1731 (1942).

■ However, this court is of the view that the trustee in this case was neither "operating the property or business" of Supergrate within the meaning of Section 25403 of the California Revenue and Taxation Code nor "conducting any business" within the meaning of 28 U.S.C. § 960. *Cf. California State Board of Equalization v. Goggin*, 191 F.2d 726 (9th Cir. 1951), cert. denied, 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680 (1952); *State Board of Equalization v. Boteler*, 131 F.2d 386 (9th Cir. 1942).

In *State Board of Equalization v. Boteler*, supra, the bankrupt was a wholesale and retail bakery. The trustee sought to sell the assets of the bankrupt corporation which consisted of furniture, fixtures, and equipment and other miscellaneous items of the business. The California State Board of Equalization contended that the sales by the trustee constituted carrying on business

under 28 U.S.C. § 124a, the predecessor of 28 U.S.C. § 960, and that the trustee was required to take out a retail tax permit and collect and remit sales taxes. In rejecting the Board's contention the court said (page 388):

"It is, of course, not a fact that the Referee in the circumstances of this case was engaged or was about to become 'engaged in the business of making sales at retail * * * of tangible personal property'. He did not continue the bankrupt's business in any sense, but instead chose to dispose of the physical equipment in accordance with his duty in such manner as to realize the highest return for the estate he was administering. Section 47, sub. a the Bankruptcy Act, 11 U.S.C.A. § 75, sub. a. In our opinion the fact that these assets had previously been utilized by the bankrupt in the conduct of a business no longer in existence has no materiality in the case. His activities did not render him taxable under the terms of the California Retail Sales Act, and, furthermore, did not subject him to the provisions of 28 U.S.C.A. § 124a, above quoted, to the effect that Trustees appointed by United States Courts to conduct any business shall be subject to state and local taxes applicable to such business."

Also, in *California State Board of Equalization v. Goggin, supra,* the court pointed out that when the trustee disposed of certain trucks that had been used in a business that had been engaged in the manufacture and sale of cabinets at retail, the sale was not made in the course of conducting a business but in the process of putting an end to a business. (191 F.2d at page 729).

This is not to say that a trustee who is liquidating the assets of a corporation may not also be conducting a business. The fact that a liquidating trustee may sometimes be conducting the business of the corporation is illustrated by the case of *United States v. Sampsell*, 266 F.2d 631 (9th Cir. 1959). In *Sampsell* the bankrupt was a real estate corporation, and the bankruptcy administration, which commenced in 1937, contin-

ued for more than 17 years. Although on May 26, 1952 the referee made an order of liquidation directing the trustee to sell the assets and close the estate, the trustee thereafter during 1952, 1953, and 1954 arranged for the sale of the remainder of the property, received interests on trust deeds from prior sales of property, received royalties from oil leases, and received proceeds from various sales of parcels of land. The court, in holding that the trustee was conducting the business of the corporation declared (pages 633–634):

> "The bankrupt was a real estate corporation, and the sale of property by it could be considered as part of its normal operations as well as a liquidation. It is not the same as the selling of the tools or equipment of production by a manufacturing company, or as the sale of trucks used in distributing produced merchandise."

The Board relies upon Franchise Tax Regulation 25401, which provides in part as follows: (Title 18, California Administrative Code, Section 25401):

> "If a receiver has full custody of and control over the business or property of a corporation, he shall be deemed to be operating such business or property within the meaning of Section 25401, whether he is engaged in carrying on the business for which the corporation was organized or only in marshaling, selling, and disposing of its assets for purposes of liquidation."

The above-quoted provision, if valid, would effectively eliminate the "doing business" requirement of Section 23151 of the California Revenue and Taxation Code as well as the "operating the property or business" requirement of Section 25403 of that Code. The Board has not cited, and the

court has been unable to find, any statutory authority for these changes; therefore, the court concludes that the quoted portion of the regulation is invalid.[7] An administrative office or body may not make a rule or regulation which alters or enlarges the terms of a legislative enactment. Section 11374 of the California Government Code; *Cooper v. Swoap* (1974), 11 Cal.3d 856, 864, 115 Cal.Rptr. 1, 524 P.2d 97, cert. denied, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296; *Mooney v. Pickett* (1971), 4 Cal.3d 669, 679, 681, 94 Cal.Rptr. 279, 483 P.2d 1231; *Morris v. Williams* (1967), 67 Cal.2d 733, 748, 63 Cal.Rptr. 689, 433 P.2d 697; *Whitcomb Hotel, Inc. v. Cal. Employment Commission* (1944), 24 Cal.2d 753, 757, 151 P.2d 233. As the California Supreme Court declared in *Cooper v. Swoap*, supra, (page 864, 115 Cal. Rptr. page 6):

> "It is axiomatic, of course, that administrative regulations promulgated under the aegis of a general statutory scheme are only valid insofar as they are authorized by and consistent with the controlling statutes. 'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations.' (*Morris v. Williams* (1967) 67 Cal.2d 733, 748, 63 Cal.Rptr. 689, 699, 433 P.2d 697, 707; *Whitcomb Hotel, [Inc.] v. California Emp. Com.* (1944) 24 Cal.2d 753, 757, 151 P.2d 233, [155 A.L.R. 405]."

Franchise Tax Regulation 25401 was modeled after a federal regulation which is now found in 26 C.F.R. § 1.6012–3(b)(4). However, the federal regulation is clearly authorized by federal statute, 26 U.S.C. § 6012(b)(3), while the quoted portion of the Franchise Tax Regulation 25401 has no statutory basis.[8]

---

**7.** Since the court concludes that the above-quoted portion of Franchise Tax Regulation 25401 is invalid, it need not determine the dispute between the parties as to whether that portion applies to trustees as well as to receivers. Also, since the court has found that the quoted portion of Franchise Tax Regulation 25401 is invalid under state law, it need not reach the question of whether that portion of

the regulation imposes an undue burden upon the liquidation process or impermissibly interferes with the operation of the bankruptcy laws. See *California State Board of Equalization v. Goggin*, 245 F.2d 44 (9th Cir. 1957), cert. denied, 353 U.S. 961, 77 S.Ct. 863, 1 L.Ed.2d 910.

**8.** It should also be noted that the federal statute and regulation relate to *income taxes*;

The existence of a federal statute, 26 U.S.C. § 6012(b)(3), also distinguishes the following two cases upon which the Board relies: *I. J. Knight Realty Corp.*, 501 F.2d 62 (3rd Cir. 1974); *United States v. Sampsell*, 266 F.2d 631 (9th Cir. 1959). In these two cases, the payment of the tax was essentially compelled by 26 U.S.C. § 6012(b)(3) or its predecessor.

The court concludes that the trustee in this case does not have a duty to file returns or pay taxes pursuant to Section 23151 et seq. of the California Revenue and Taxation Code. This opinion contains findings of fact and conclusions of law.

### APPENDIX A

March 3, 1978.

Richard Mednick
906 U.S. Courthouse
312 North Spring Street
Los Angeles, CA 90012

Filing Requirements of a Receiver or Trustee of a Bankrupt Corporation

The purpose of this letter is to formally advise you that the Franchise Tax Board is initiating a filing enforcement program to insure compliance with the Bank and Corporation Tax Law (see copy of legal ruling attached).

Over the years an increasing number of corporations filing for straight bankruptcy have not been complying with the law in respect to filing annual franchise tax returns. In the majority of these cases, a receiver or trustee has been appointed who, by virtue of such appointment, assumes this responsibility pursuant to 28 USC Section 960 and Sections 25403 and 25404 of the California Bank and Corporation Tax Law.

Franchise Tax Board Form 100 must be filed during the administration of all corporation bankruptcy estates. The tax must be paid when the returns are filed and will be no less than the minimum tax of $200 per year.

Failure to comply may subject the receiver, trustee, assignee and/or officers of the corporation to a transferee liability against them personally, pursuant to Sections 25701 and 25701(A) of the Bank and Corporation Tax Law.

(s)

E. Zimmerman
Tax Auditor, Corporation Audit

Enc.

### APPENDIX B

### Legal Ruling 407

*Facts* :

Advice has been requested concerning the liability of a trustee or receiver of a bankrupt corporation for payment of the minimum franchise tax.

*Question* :

Is a federal trustee or receiver that is liquidating a bankrupt and nonoperating corporation required to file and pay the minimum franchise tax?

*Decision* :

Yes.

*Discussion* :

To do business in California, a corporation can be created as an artificial legal entity with those powers permitted by state law. As a creature of statute, a corporation is also subject to state regulation from beginning of legal life to termination of existence.

As part of that regulatory life and for the benefit and protection extended under the law and government of California, a corporation is taxable pursuant to Revenue and Taxation Code Section 23151 for so long as

---

while Section 23151 of the California Revenue and Taxation Code, which the Board seeks to enforce in this case, imposes a *franchise tax* "for the privilege of exercising its corporate franchises within this state." See *Rosemary Properties, Inc. v. McColgan*, 29 Cal.2d 677, 681, 177 P.2d 757, 760 (1947); *Bank of Alameda County v. McColgan*, 69 Cal.App.2d 464, 472, 159 P.2d 31 (1945). Although the tax is based upon net income except for the $200.00 minimum, it is nevertheless a franchise tax.

it is "doing business" within the limits of this state. "Doing business" is defined in Revenue and Taxation Code Section 23101 as " . . . actively engaging in any transaction for the purpose of financial or pecuniary gain or profit." This definition is applicable during the entire existence of a corporate entity. It is not limited by or contingent upon the fact a business may be winding up its affairs under the auspices of either court appointed fiduciaries or regularly elected corporate officers.

If a business is being liquidated under the jurisdiction of a federal court, the authority of state taxing bodies to levy a tax upon such an entity is derived from 28 USC § 960 which provides:

> Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation. June 25, 1948, c. 646, 62 Stat. 927.

The history of § 960, enacted in 1948, including its predecessor, 28 USC § 124a, shows that its purpose was to prevent receivers and trustees from operating tax free businesses in competition with tax burdened operators of businesses not in receivership or bankruptcy. H.R.Rep., No.1138, 73rd Cong. 2d Sess.

For federal tax purposes, "conducting a business" has been determined to include gradual liquidation of assets during bankruptcy. In *In re I. J. Knight Realty Corp.*, 501 Fed.2d 62 (1974), the court held that 28 USC § 960 was not intended to establish or limit substantive income tax liability. As such, a nonoperating trustee of a bankrupt corporation was responsible for payment of federal taxes on income generated during the liquidation and distribution of the bankrupt estate. Also, in *United States v. Sampsell*, 266 Fed.2d 631 (1959) (9th Circuit), the court sustained the imposition of tax on income from the liquidation activities of a trustee after examination of the relevant statutes and a finding that the tax law determined the scope of its own applicability.

With regard to the California franchise tax, the phrase "conducting any business" has not been subject to federal judicial interpretation in a liquidation circumstance. In an analogous state corporate liquidation, however, such tax was determined appropriate in *Hise v. McColgan*, 24 Cal.2d 147 (1944).

The question before the California Supreme Court was whether a corporation in liquidation under *state* order was "doing business" to be subject to payment of the franchise tax. The Bank and Corporation Franchise Tax Act (Section 5) defined "doing business" as

> . . . actively engaging in any transaction for the purpose of financial or pecuniary gain or profit.

The court held that during the process of liquidation, business transactions (sales, rentals and transfer of assets; collections upon notes and other obligations) were conducted; and

> [w]hile no profit may have been made as that term is usually understood, such factor is not controlling in the definition of the term "doing business"; rather the criterion is whether or not the goal or aim is financial or pecuniary gain [Citation]. It should be clear that the [Building and Loan] commissioner in liquidating . . . [the corporation] was endeavoring to get the best price obtainable for its assets and to conduct its affairs in liquidation to the end that the most financial gain would be realized for its creditors and stockholders . . . . It is not necessary to constitute doing business for franchise tax purposes that there be a regular course of business or transactions.

As such, activities in liquidation were embodied in the concept of "doing business" for purposes of franchise tax liability.

Although a federal court would not be bound by the state construction of the California franchise tax law, such interpretation should be entitled to substantial weight. Accordingly, it would appear present application of the franchise tax should be harmonious with the direction provided by the California Supreme Court.

"Doing business," as defined by Revenue and Taxation Code Section 23101 and as applied in corporate liquidation by this state's Supreme Court, should be considered synonymous with "conducting a business" under 28 USC § 960.

Consequently, a tax measured by income realized by a nonoperating trustee or receiver during the period of liquidation or receivership should be asserted in favor of the state. Furthermore, if the activities during the period under consideration result in negative income or in a measured tax that is less than the statutory minimum, the provisions of Revenue and Taxation Code Section 23151 still require payment of the minimum tax from every corporation "doing business" within the limits of this state.